**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CRAIG BARRY MARSH,

                Plaintiff,

vs.                                         Case No.  3:11-cv-728-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

Craig Barry Marsh ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB").  His alleged inability to work is based on mental impairments and physical impairments resulting in chronic pain in his cervical, thoracic, and lumbar spine; his shoulders; and his left knee. See Transcript of Administrative Proceedings (Doc. No. 13; "Tr.") at 359-434.[2]  On May 8, 2006, Plaintiff filed an application for DIB, Tr. at 220-24, alleging an onset date of April 29, 2003, Tr. at 220.  Plaintiff's application was denied initially, Tr. at 152-54, and was denied on reconsideration, Tr. at 156-57.  An Administrative Law Judge ("ALJ") held a hearing on November 29, 2007, Tr. at 30-70, and issued a decision on March 21, 2008, finding Plaintiff

_____

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed October 27, 2011; Order of Reference (Doc. No. 15), entered October 28, 2011.

[2]      The undersigned has not located any documents submitted by Plaintiff in which he specifically listed the impairments affecting his ability to work.  Information regarding Plaintiff's alleged impairments has been gleaned from a review of the detailed notes of Plaintiff's treating physician, William Finan, M.D. ("Dr. Finan").

was not disabled[3] through the date last insured of December 31, 2005 and denying Plaintiff's claim, Tr. at 138-46.  On October 30, 2009, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further proceedings.  Tr. at 149-51.  On March 30, 2010 the ALJ held a second hearing, Tr. at 71-130, and issued a new Decision on April 19, 2010, again finding Plaintiff was not disabled through the date last insured and denying Plaintiff's claim, Tr. at 13-24.  The Appeals Council denied Plaintiff's request for review on June 3, 2011.  Tr. at 1-4.  On July 22, 2011, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision.  Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

At the time of the second hearing, Plaintiff was fifty-six years of age.  Tr. at 75. Plaintiff has past relevant work from 1978 or 1979 through 1998 as a maintenance worker for the Nassau County, Florida School Board.  Tr. at 77, 305.  Apparently after 1998, Plaintiff was forced to retire due to "[m]ental and physical disability."  Tr. at 77.  From 1998 through the date of the second hearing, Plaintiff was "drawing a pension" from his former employer as a result of his recognized disability.  Tr. at 78.

Plaintiff frames one issue for the Court to consider: whether "[t]he [ALJ] erred by not fully and fairly evaluating all the medical records and placing appropriate weight on the

---

[3]       "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

opinions of the treating physicians[.[4]]" Memorandum in Support of Complaint (Doc. No. 19; "Pl.'s Mem."), filed January 8, 2012, at 6 (emphasis and capitalization omitted).  Plaintiff then separates the one broad issue into two precise issues: (1) whether the ALJ erred by not assigning controlling weight to the opinion of Dr. Finan, Plaintiff's primary care treating physician, regarding Plaintiff's physical limitations, electing instead to rely primarily on opinions of non-examining physicians; and (2) whether the ALJ erred by not specifying the weight assigned to the opinion of Raul Soto-Acosta, M.D. ("Dr. Soto-Acosta"), a psychiatrist who treated Plaintiff for a short period of time while Plaintiff was committed pursuant to the Baker Act; and the opinion of David W. Cheshire, M.D. ("Dr. Cheshire"), who treated and evaluated Plaintiff in connection with a workers' compensation case, regarding Plaintiff's mental limitations.  See Pl.'s Mem. at 6-12. Upon thorough review of the record and the parties' memoranda, the undersigned finds that the decision of the Commissioner is due to be reversed and remanded for the limited reason explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform

---

[4]        A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ performed the required five-step sequential inquiry.  At step one, the ALJ observed Plaintiff did not engage in substantial gainful activity from April 29, 2003 (the alleged onset date) through December 31, 2005 (the date last insured).[5] Tr. at 15 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffered from the following severe impairments: "affective disorder; history of drug addiction and alcoholism; post-traumatic stress disorder; degenerative joint disease of the shoulders and knees; and degenerative disc disease of the spine."  Tr. at 15-16 (emphasis and citation omitted).  At step three, the ALJ determined that through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 16 (emphasis and citation omitted).  The ALJ determined Plaintiff had the following residual functional capacity ("RFC") through the date last insured:

> [Plaintiff could] perform light work as defined in 20 CFR 404.1567(b), including the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, and to stand and walk 6 hours in an 8-hour workday. [Plaintiff] must avoid ladders, unprotected heights, and operation of heavy moving machinery. [Plaintiff] requires a low stress work environment, simple tasks, and limited contact with the public. [Plaintiff] can occasionally bend, crouch, kneel, stoop, squat, or crawl. [Plaintiff] must avoid the operation of foot controls, overhead

---

[5]      The ALJ noted Plaintiff had some earnings in 2003; however, the ALJ found the 2003 earnings did not rise to the level of substantial gainful activity.  Tr. at 15.

reaching, and the push/pull of arm controls. [Plaintiff] requires a sit/stand option.

Tr. at 17 (emphasis omitted). At step four, the ALJ determined that through the date last insured, Plaintiff was "unable to perform any past relevant work." Tr. at 22 (emphasis and citation omitted). At step five, after "considering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ found that through the date last insured, "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," including, "[a]ssembler [of] small products" and "[w]arehouse checker[.]" Tr. at 23-24 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d

1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

The two issues before the Court are (1) whether the ALJ erred by not assigning controlling weight to the opinion regarding Plaintiff's physical limitations of Dr. Finan, the primary care treating physician, instead electing to rely primarily on the opinions of non-examining physicians; and (2) whether the ALJ erred by not assigning controlling weight to the respective opinions regarding Plaintiff's mental limitations of Dr. Soto-Acosta and Dr. Cheshire, two of Plaintiff's treating psychiatrists.  See Pl.'s Mem. at 6-12.

As explained in more detail below, the ALJ assigned little weight to the opinion of Dr. Finan,  Tr. at 20-21; the ALJ did not specifically articulate the weight assigned to the opinion of Dr. Soto-Acosta, see generally Tr. at 13-24; and the ALJ assigned no weight to the opinion of Dr. Cheshire, Tr. at 22.  In addition to those opinions and relevant to the issues raised on appeal, the ALJ assigned the opinion of Charles I. Hancock, M.D. ("Dr. Hancock"), a non-examining physician, great weight in regard to the physical limitations of Plaintiff.  Tr. at 20. Further, the ALJ afforded the opinion of Audrey Goodpasture, M.D. ("Dr. Goodpasture"), a non-examining physician, some weight in regard to Plaintiff's physical limitations.  Tr. at 21. Likewise, the ALJ assigned the opinion of Olin Morris Hamrich, Jr., Ph.D. ("Dr. Hamrich"), a non-examining psychologist, great weight in regard to the mental limitations of Plaintiff.  Tr. at 22.

In resolving the two issues, the undersigned first sets out the law with respect to the various opinions of treating and non-examining physicians, and then addresses each separate issue respectively.

The Regulations instruct ALJs how to weigh the medical opinions[6] of treating physicians properly.  See 20 C.F.R. § 404.1527(d).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2).  When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician.  Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir.

---

[6]      Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment.  20 C.F.R. § 404.1527(a)(2).

2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

Generally, a non-examining physician's opinion is given less weight than that of a treating or examining physician.  20 C.F.R. § 404.1527(d)(1).  Nevertheless, every medical opinion should be considered in making the disability determination.  20 C.F.R. § 404.1527(d).  The same factors are relevant in determining the weight to be given to a non-examining physician's opinion as are relevant in determining the weight to be given to a treating physician's opinion:  (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F. R. §§ 404.1527(f), 416.927(f).  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citing 20 C.F.R. § 404.1526 (1980)); see also 20 C.F.R. § 404.1527(d)(2).

## A.  Dr. Finan's Opinion (Physical Limitations)

Plaintiff contends the ALJ should have afforded the opinion of Dr. Finan, his treating physician, controlling weight because Dr. Finan is "[t]he only doctor who examined [ P]laintiff on a consistent basis . . . and his opinions should be afforded more weight than a physician

who simply testifies as to [ P]laintiff's orthopedic difficulties." Pl.'s Mem. at 9.  According to Plaintiff, the Social Security Administration "should have [ P]laintiff examined by an independent physician if the questions [regarding the physical limitations] persist rather than rely on a doctor who has never examined [ P]laintiff." Id.  Defendant contends that non-examining medical expert Dr. Hancock's opinion regarding Plaintiff's RFC was properly given great weight over the opinion of Dr. Finan.  Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem."), filed February 28, 2012, at 6-7.  In addition, Defendant contends the ALJ properly discounted the opinion of Dr. Finan because the opinion is not supported by objective medical findings and is inconsistent with his own records.  Id. at 7 (citations omitted).  Further, Defendant contends that non-examining physician Dr. Goodpasture's opinion "also undermines Dr. Finan's opinion." Id. at 8 (citations omitted).

Plaintiff has a substantial history of physical problems, but they are not extremely well-documented in the record.  See generally Tr. at 97, 354-435, 491-93.  According to Plaintiff, he has had a total of four operations on his left knee, and his doctor has indicated that he will have to undergo a knee replacement if problems persist.  Tr. at 89, 92.  Plaintiff also reported having had herniated discs in his back that required a "laminectomy" and/or a "partial diskectomy" around 1990.  Tr. at 101-02.  Plaintiff has severe headaches, and he experiences pain in his neck and shoulders.  Tr. at 89, 91, 93, 94.  Plaintiff at some point had a rotator cuff repair.  Tr. at 101.

The physical problems began at an unknown time and were exacerbated in December 1997, when Plaintiff "suffered a work-related injury" by "f[a]ll[ing] off a scaffolding and reinjur[ing] his back and his knee." Tr. at 563.  Shortly thereafter, on February 11, 1998,

Plaintiff had a MRI performed on his left knee.  Tr. at 491-92.  Saul Eisen, M.D., the radiologist reading the MRI, gave the following impression:

> #1. Extensive degenerative and hypertrophic changes. #2. Joint effusion.  #3. Marked degenerative changes involving both menisci with tears involving the posterior portions.  There is abnormality both of morphology as well as signal. #4. Anterior cruciate ligament is not visualized and is probably torn. #5. Moderate sized bursa located between the tibia and fibula containing several osseous densities compatible with synovial osteochondromatosis. #6. Bone contusion involving both femoral condyles and the posterolateral of the tibia.

Tr. at 492 (emphasis and capitalization omitted).

On May 12, 1998, Plaintiff underwent a lumbar spine MRI.  Tr. at 493.  Raymond E. Batsys, M.D. gave the following summary of findings from the lumbar spine MRI:

> There is a small anterior epidural defect at L2-3 that is principally central.  There is a moderate sized anterior epidural defect at L3-4 that is broadbased and extends to the nerve foramina bilaterally. This measures approximately 4 mm and most probably represents a herniation. . . . The L4-5 level demonstrates a decrease of intervertebral disc height, some disc desiccation, and a moderate sized disc herination that is principally central and at the right nerve foramen. . . . The L5-S1 also demonstrates an approximately 5mm anterior epidural defect that is broadbased and shows very slight central enhancement. . . .

Tr. at 493.

Fast forwarding to the period of time that Dr. Finan treated Plaintiff for physical problems, from January 2004 through June 20, 2006, the record contains notes from relatively regular visits with Dr. Finan.  See Tr. at 354-434; see also Tr. at 435 (notation of one visit in 2002 indicating Plaintiff appeared "for lab only").  During these visits, Dr. Finan noted that Plaintiff demonstrated a wide range of physical difficulties in his knees and back that caused pain.  See Tr. at 354-434.  In addition to these difficulties, Plaintiff also had issues with his left shoulder.  See Tr. at 354-434.  Consequently, Dr. Finan prescribed Plaintiff several medications to help control his pain.  See Tr. at 354-434.  In 2006, however,

-10-

Plaintiff stopped taking medications because the medications would "start[ his] addiction off"; instead, according to his testimony, he relies on a "12 step program," "healing prayer," and "bible studies" in lieu of medications.  Tr. at 79-80, 85.

On October 3, 2002, prior to the alleged onset date and a few months after Plaintiff's initial visit with Dr. Finan, Dr. Finan completed a form for the SSA, Tr. at 495-98, in which he indicated as follows.  The diagnosis was "multiple musculoskeletal contusions and [illegible], low back pain[.]" Tr. at 495.  The prognosis was "[p]oor."  Tr. at 495.  Plaintiff's impairments could be expected to last or had lasted at least 12 months.  Tr. at 496.  Plaintiff's pain and other symptoms would "[o]ften" interfere with attention and concentration.  Tr. at 496. Plaintiff could not walk any "city blocks" without rest or severe pain.  Tr. at 496.  He could sit 10 minutes at a time, for a total of less than 2 hours per day.  Tr. at 496-97.  Plaintiff could stand or walk less than 2 hours per day.  Tr. at 497.  Any job performed by Plaintiff would need to permit shifting positions from sitting, standing, and walking.  Tr. at 497.  Plaintiff would require unscheduled breaks lasting about 10 minutes each.  Tr. at 497.  Plaintiff could occasionally lift less than 10 pounds but never 10 pounds or more.  Tr. at 498.  Plaintiff could never twist, stoop, crouch, climb ladders, or climb stairs.  Tr. at 498.

After the October 3, 2002 assessment, between 2004 and 2006, Dr. Finan routinely noted Plaintiff suffered from tenderness in his left shoulder and decreased range of motion, especially in elevation above the midline.   Tr. at 367, 369, 373, 377, 379, 382, 385, 387, 390, 393, 396, 400, 402.  In addition, Plaintiff's cervical, thoracic, and lumbar regions had decreased range of motion and often paravertebral muscle spasm bilaterally.  Tr. at 367, 369, 371, 373, 377, 379, 385, 396, 400, 410, 412, 414, 418, 420, 422, 424, 427, 434.  Near

the end of Dr. Finan's treatment of Plaintiff as documented by the notes, edema and tenderness in the left knee were sometimes noted, as well as less severe problems in the right knee.  Tr. at 367, 369.

On June 20, 2006, Dr. Finan filled out a form for the Florida Department of Health that indicated Plaintiff had various degrees of loss of motion in the cervical, thoracic, and lumbar spine regions.  Tr. at 355.  In addition, Dr. Finan made notes regarding Plaintiff's shoulders, elbows, and knees that the undersigned cannot decipher.  Tr. at 355.  He indicated Plaintiff suffered from moderate spasm in the cervical, thoracic, and lumbar regions.  Tr. at 355.  In terms of Plaintiff's grip strength, Dr. Finan noted Plaintiff had full dexterity in the left hand but decreased dexterity in the right hand.  Tr. at 355.  It was noted that Plaintiff could "button clothing," could "turn doorknobs," could "write [illegible] difficulty," and could "grip a penny." Tr. at 355.  According to Dr. Finan, Plaintiff could squat and walk on his heals and toes.  Tr. at 355.

There are two physicians at issue who opined in contradiction to Dr. Finan's opinion regarding Plaintiff's physical issues.  At Plaintiff's second hearing before the ALJ, Dr. Hancock, a non-examining physician, testified regarding Plaintiff's impairments and their effect on his ability to work.  Tr. at 74, 96-116.  Dr. Hancock is a board certified orthopedic surgeon, but he is not currently practicing.  Tr. at 74, 96, 211.

Dr. Hancock recognized that Plaintiff self-reported having four knee surgeries, but Dr. Hancock indicated that "we don't know the nature of the surger[ies] or the outcome and there's very little of an objective nature to give a real good detailed description of the current or the situation of his knees at the [date last insured]."  Tr. at 98.  Dr. Hancock testified that

Plaintiff suffered from the impairments of "status post lumbar laminectomy, remotely"; "degenerative left knee, severity undetermined"; "degenerative shoulder bilateral, status post, rotator cuff repair, remotely"; "tennis elbow, his left elbow, epicondylitis"; and "an old DL fracture of the second meta [INAUDIBLE]." Tr. at 103.  Dr. Hancock recognized Plaintiff "has pain in the neck probably related to degeneration." Tr. at 103.  Dr. Hancock opined that the impairments from which Plaintiff suffered until the date last insured did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 103.

As for Plaintiff's RFC, Dr. Hancock testified that he "f[ou]nd no reason that [Plaintiff could not] sit up to eight hours" in a work day with normal breaks.  Tr. at 103-04.  Dr. Hancock opined that Plaintiff could stand or walk up to six hours in a standard eight-hour work day.  Tr. at 104.  Dr. Hancock further opined that Plaintiff could lift 20 pounds frequently, "but not above shoulder height because of his repaired rotator cuffs." Tr. at 104.  According to Dr. Hancock, Plaintiff should have no problem using his hands for repetitive motions and pushing and pulling of arm controls.  Tr. at 104-05.  Plaintiff could reach overhead without weights, but could not reach above shoulder height with weight.  Tr. at 106.  Plaintiff could frequently perform tasks involving fine manipulation.  Tr. at 105.  Plaintiff could also frequently use his feet for pushing and pulling leg controls.  Tr. at 105.  Dr. Hancock stated that Plaintiff could occasionally bend, stoop, crawl, or climb ramps or stairs.  Tr. at 105.  Plaintiff could never climb ladders, ropes, or scaffolds.  Tr. at 105.  Lastly, Dr. Hancock indicated Plaintiff should avoid exposure to concentrated vibrations because of the issues with the rotator cuffs.  Tr. at 106.

A second physician who opined in contradiction to Dr. Finan's opinion was Dr. Goodpasture, a State Agency Medical Consultant who did not examine Plaintiff.  Dr. Goodpasture reviewed the medical evidence available to her[7] and completed a RFC form on August 15, 2006.  Tr. at 436-43.  According to Dr. Goodpasture, Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight-hour work day; sit with normal breaks about six hours in an eight-hour work day; and push or pull but with limitations in his lower extremities.  Tr. at 437. Further, Dr. Goodpasture stated Plaintiff could occasionally climb ramps and stairs, and he could occasionally balance, stoop, kneel, crouch and crawl.  Tr. at 438.  According to Dr. Goodpasture, Plaintiff could never climb ladders, ropes, or scaffolds.  Tr. at 438.  Dr. Goodpasture further stated Plaintiff was unlimited in handling, fingering, and feeling, but he was limited in reaching in all directions (including overhead).  Tr. at 439.  Dr. Goodpasture stated Plaintiff must avoid hazards such as machinery or heights.  Tr. at 440.  Lastly, Dr. Goodpasture noted that her review of the record and her subsequent opinions contradicted those of Dr. Finan from 2002.  Tr. at 442.

Taking all of these opinions into consideration, and after reviewing the evidence of the record, the ALJ assigned little weight to Dr. Finan's opinion, great weight to Dr. Hancock's opinion, and some weight to Dr. Goodpasture's opinion.  Tr. at 20-21.  The ALJ properly weighed and considered the opinions of these physicians who opined on Plaintiff's physical limitations and their effect on Plaintiff's ability to work.

---

[7]    Defendant concedes Dr. Goodpasture "did not review all of the evidence," but Defendant nevertheless argues "her findings are supported by the medical evidence and consistent with the record as a whole."  Def.'s Mem. at 8.

As to the treating physician, Dr. Finan, the ALJ provided explicit and adequate reasons, supported by substantial evidence, for assigning little weight to the opinion.  Tr. at 20-21.  The ALJ stated generally that Dr. Finan's opinion "is not consistent with his own treatment notes or with the objective findings of record, it is based on inconsistent findings, and it is not supported by the record as a whole."  Tr. at 20.  The ALJ noted specifically that Dr. Finan's treatment "notes do not indicate any significantly abnormal objective findings which would suggest neurological compromise of the neck or back or significant defect of the knees or shoulders."  Tr. at 19; see generally Tr. at 373-402.  Further, the ALJ observed that "Dr. Finan never performed a straight leg test on [Plaintiff], and his notes largely indicate that [Plaintiff] had no sensory or motor deficit."  Tr. at 19; see Tr. at 373, 377, 385, 393, 396, 400, 402.  The ALJ "acknowledge[d] that Dr. Finan's notes indicate some decreased range of motion of the spine and other joints, paravertebral muscle spasm and tenderness bilaterally, and tenderness at the joints on occasion," but the ALJ found that those findings "do not support the significant symptoms and limitations alleged by [Plaintiff]."  Tr. at 19.  In addition, the ALJ pointed out that during the relevant time period, the only treatment Plaintiff received for the alleged physical impairments was prescriptions for medication from Dr. Finan.  Tr. at 19; see Tr. at 373, 375-77, 380-94, 396-97, 400-03, 407-24, 426-29, 431-34.  Morever, the ALJ noted that Dr. Finan is not a specialist, Tr. at 21, and he never referred Plaintiff to a neurological or orthopedic specialist for any evaluation or treatment during the relevant period.  Tr. at 19, 21; see generally Tr. at 373-434.

Conversely, the ALJ assigned Dr. Hancock's opinion great weight because "it is consistent with the objective medical evidence of record, and supported by the record as a

whole[.]" Tr. at 20.  The ALJ stated that Dr. Hancock "offered a thorough rationale to support his opinion, based on his review of the complete record[.]"  Tr. at 20; see Tr. at 108-10, 112-16.  Also, the ALJ noted Dr. Hancock is a board certified specialist in the field of orthopedic surgery.  Tr. at 20; see Tr. at 209-11.  Furthermore, the ALJ recognized that Dr. Hancock gave explicit reasons for taking issue with multiple portions of Dr. Finan's 2002 opinions on the SSA form and the 2006 opinions on the Florida Department of Health form.  Tr. at 20; see Tr. at 108-16.

Lastly, the ALJ assigned some weight to the opinion of Dr. Goodpasture  because the opinion was consistent with the medical evidence of record and supported by the record as a whole.  Tr. at 21; see generally Tr. at 373-434.  After reviewing the record, Dr. Goodpasture opined that Plaintiff was capable of performing "a slightly reduced range of light work."  Tr. at 436-43; see generally Tr. at 373-434.

The undersigned finds that the ALJ properly weighed the opinion of Plaintiff's treating physician, Dr. Finan, and considered the opinions of the non-examining physicians, Dr. Hancock and Dr. Goodpasture.   Additionally, the undersigned finds there is substantial evidence to support the weight the ALJ assigned to the opinions of the three respective physicians.[8]  In light of this finding, there is no need to require a consultative examination as Plaintiff suggests.  See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007)

---

[8]       The undersigned recognizes that generally the opinions of non-examining physicians, taken alone, do not constitute substantial evidence.  Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)).  However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence.  Oldham, 660 F.2d at 1084.  Here, though the ALJ assigned great weight to the opinion of one non-examining physician, the ALJ did not completely discount the treating physician's opinion, instead electing to assign it little weight.

(stating the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision") (citing Doughty, 245 F.3d at 1281).

### B. Dr. Soto-Acosta's Opinion and Dr. Cheshire's Opinion (Mental Limitations)

Plaintiff contends that the ALJ did not "discuss any of the opinions of Dr. Soto-Acosta who treated and examined [ P]laintiff in 2004 and assigned a GAF score of 30 or Dr. Cheshire who evaluated [ P]laintiff, for the workers' compensation case and opined that [ P]laintiff would be unable to work based on his mental health conditions." Pl.'s Mem. at 12. Defendant argues with respect to Dr. Soto-Acosta that the ALJ "properly considered and gave less weight" to that opinion. Def.'s Mem. at 11.  With respect to Dr. Cheshire, Defendant contends the ALJ properly found the opinion was outside the relevant time period and was otherwise unsupported.  Id. at 12-13.  The undersigned addresses the opinions in turn.

On January 28, 2004, Plaintiff was involuntarily admitted to the Mental Health Center of Jacksonville pursuant to the Baker Act. Tr. at 445.  Dr. Soto-Acosta treated Plaintiff during this admission.  See Tr. at 445-53.  On admission, Plaintiff was diagnosed with Bipolar disorder, not otherwise specified, and assigned a GAF score of thirty by Dr. Soto-Acosta. Tr. at 445-46.  Five days later on February 2, 2004, Plaintiff was discharged with a diagnosis of Bipolar disorder, not otherwise specified, and assigned a GAF score of fifty-one by Dr. Soto-Acosta.  Tr. at 447-48.  Upon Plaintiff's discharge, Dr. Soto-Acosta authored a detailed discharge summary in which he made various observations about symptoms, diagnosis, prognosis, etc.  Tr. at 445-53.  In the summary, Dr. Soto-Acosta noted the following about

Plaintiff's mental status at the time of discharge: "[Plaintiff] says he is feeling fine.  Affect tends to be expansive, not labile and he is not exhibiting serious mood swings at this time." Tr. at 447.  In addition, Dr. Soto-Acosta noted Plaintiff's anxiety on discharge was mild.  Tr. at 447. Dr. Soto-Acosta opined Plaintiff's speech was spontaneous.  Tr. at 447.  Dr. Soto-Acosta assigned a prognosis of "fair[.]" Tr. at 448 (capitalization omitted).  Although Plaintiff's condition had improved, Dr. Soto-Acosta did recommend that Plaintiff continue his medications as per his primary care doctor.  Tr. at 448-49.

The ALJ did not specifically state the weight he assigned to Dr. Soto-Acosta's opinion, but the ALJ explained that he afforded great weight to the opinion of Dr. Hamrich, Tr. at 22, who did not examine Plaintiff and who testified at the hearing as a medical expert in psychology, Tr. at 116-25.  According to the ALJ, Dr. Hamrich's opinion "is consistent with the objective medical evidence during the period in question, and supported by the record as a whole. . . ." Tr. at 22.  In discussing Dr. Hamrich's opinion, the ALJ did mention the 2004 Baker Act admission and treatment by Dr. Soto-Acosta:

> [Plaintiff] was admitted as an inpatient . . . in January 2004 for less than a week and was discharged with a diagnosis of bipolar disorder.  However, as Dr. Hamric[h] testified, [the admission was] brief, [Plaintiff] cleared up rapidly with appropriate treatment, and his mental status on discharge was fairly benign. Upon discharge from his admission in January 2004, [Plaintiff] reported feeling fine, he was cooperative and polite, he was oriented to person, place, and time.

Tr. at 21 (citations omitted).  Other than the reliance on Dr. Soto-Acosta's discharge summary in an apparent attempt to bolster Dr. Hamrich's opinion, the ALJ did not discuss Dr. Soto-Acosta's discharge summary and opinion.  See generally Tr. at 13-24.  As mentioned before, Dr. Hamrich did not treat or examine Plaintiff; Dr. Hamrich only reviewed the record and testified as a medical expert at the hearing.  See Tr. at 116-25.

-18-

If an ALJ does not state with particularity the weight afforded to a treating physician's opinion and the reasons therefor, "'it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting Cowart v. Schweiker, 662 F.2d 731, 735  (11th Cir. 1981)); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); Lewis, 125 F.3d at 1440 (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).  Although the Commissioner may be correct that the ALJ "considered and gave less weight to the opinion of Dr. Soto-Acosta," Def.'s Mem. at 11, without the ALJ explicitly saying so and providing reasons therefor, this Court cannot review that aspect of the Decision to determine whether it is supported by substantial evidence, see Winschel, 631 F.3d at 1179 (citation omitted).  Accordingly, this matter must be remanded. On remand, the ALJ must state with particularity the weight afforded to Dr. Soto-Acosta's opinion, and the reasons for that weight.  Also, if appropriate, the ALJ shall reconsider the effects of Plaintiff's mental limitations on his ability to work.

Turning briefly to Plaintiff's claim that the ALJ did not discuss Dr. Cheshire's opinion, see Pl.'s Mem. at 12, that assertion is not supported by the record.  In the year 2000, Plaintiff was collecting workers' compensation and was treated by Dr. Cheshire, a mental health physician.  Tr. at 563-66.  On March 8, 2000, Dr. Cheshire opined that Plaintiff "must be considered permanently and totally disabled for further employment . . . . [B]ased on clinical observation of [Plaintiff] over time which has revealed prominent chronic pain syndrome that

has served to compromise [Plaintiff]'s emotional stability."  Tr. at 566.  In reviewing this medical evidence, the ALJ specifically referred to Dr. Cheshire's opinion and stated that the opinion was not assigned any weight.[9]  Tr. at 22.  The ALJ properly noted that "[the] opinion was formed . . . prior to the alleged onset date [of disability] . . . and [is] not . . . relevant to the claimant's functioning during the period in question."  Tr. at 22 (citations omitted); see Barclay v. Comm'r of Soc. Sec. Admin., 274 F. App'x 738, 741 (11th Cir. 2008) (unpublished) (noting that certain medical opinions were "not material to the relevant time period").

## V. Conclusion

The ALJ did not state with particularity the weight afforded to Dr. Soto-Acosta's opinion and the reasons therefor.  As such, remand is required for the ALJ to do so and to reconsider the effects of Plaintiff's mental limitations, if appropriate.  In accordance with the foregoing it is

**ORDERED:**

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(a)     Reevaluate the opinion of treating physician Dr. Soto-Acosta and state with particularity the weight afforded to Dr. Soto-Acosta's opinion; if the opinion is discounted, adequate reasons showing good cause for discounting it shall be provided and shall be supported by substantial evidence;

---

[9]      The ALJ did not refer to Dr. Cheshire by name, Tr. at 22, but the ALJ cited "Exhibit . . . 15F," which consists of the medical evidence associated with Dr. Cheshire, see Tr. at 565-77.

      (b)     If appropriate, reconsider the effects of Plaintiff's mental limitations on his ability to work; and

      (c)     Take such other action as may be necessary to resolve this claim properly.

2.     The Clerk is directed to close the file.

3.     If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on June 1, 2012.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

vts

Copies to:

Counsel of Record